1
2
3
4
5
6
7      UNITED STATES DISTRICT COURT
8      NORTHERN DISTRICT OF CALIFORNIA
9
10

| | |
|---|---|
| ETHAN COLLINS, | Case No. 18-cv-06442-NC |
| Plaintiff, and | Related Case: 18-cv-06297-NC |
| MAURICE FRANK, | **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** |
| Plaintiff, | |
| v. | Re: Dkt. Nos. 16, 38 |
| GOLDEN GATE BELL, LLC, | |
| Defendant. | |

In these class action employment cases brought by Taco Bell workers, plaintiffs Ethan Collins and Maurice Frank move to remand back to state court. The central issue is whether, under CAFA's home state and local controversy exceptions, more than two-thirds of the proposed class members are citizens of California. 28 U.S.C. § 1332(d)(4)(A)–(B). Because the Court finds that the evidence presented shows that more than two-thirds of the proposed class members are citizens of California, the motion to remand is GRANTED.

## I.     Background

### A.  Procedural History

Plaintiff Ethan Collins filed his case in Santa Clara County Superior Court in August 2018. Dkt. No. 1 (Notice of Removal), at 1. It was one of four similar cases filed in Northern California, including a related case brought by plaintiff Maurice Frank in

Alameda County Superior Court. *Id*.; *see also* Dkt. No. 1 in Case No. 18-cv-06297. Defendant Golden Gate Bell removed the cases to this court. Dkt. No. 1. Collins and Frank moved to remand. Dkt. No. 16. The parties fully briefed the matter and the Court held a hearing. Dkt. Nos. 16, 19–24, 29, 34. The Court ordered jurisdictional discovery and supplemental briefing specifically targeted at the question of the citizenship of the members of the proposed class. Dkt. Nos. 34, 37. The parties submitted supplemental briefing, including evidentiary objections. Dkt. Nos. 39, 43, 44, 46.

## B. Evidence Presented

In support of the motion to remand, plaintiffs requested and this Court granted jurisdictional discovery from Golden Gate Bell. Dkt. No. 24. Golden Gate Bell produced a data set containing identifying information for the putative class members, including those individuals' names, addresses, employment dates, U.S. citizenship status, driver's license or other identification (such as municipal or school ID cards) information. Dkt. No. 38, Ex. 1 (Declaration of Jenny Yu). The data set included records for 11,626 people. *Id*. at ¶ 3.

### 1. Addresses

11,613 (99.98%) of the employees in the data set provided California addresses; 13 (0.11%) provided addresses in another state. *Id*. at ¶¶ 4, 5, 9.

### 2. Identification

Employees provided identification documentation to Golden Gate Bell via their I-9 forms. Dkt. No. 38 at 4. 9,134 (78.57%) individuals provided ID documentation from a California entity (state government, local government, or school); 374 (3.22%) provided ID documentation from another state; and 2,118 (18.22%) provided IDs that were not state-specific. Yu Decl. at ¶¶ 6, 7, 8, 10. The 9,134 employees with California identification included 7,129 (78.05%) with documents issued by the State of California (e.g. driver's licenses). *Id*. at ¶ 11. The 9,134 employees with California identification also included 2,003 (21.93%) with documents issued by California schools (e.g. school IDs, records, and report cards). *Id.* at ¶ 12. The 9,134 employees with California

2

identification finally included 2 (0.02%) with documents issued by local municipalities (the City and County of San Francisco and from Santa Rosa). *Id.* at ¶ 13, 14.

### 3. Citizenship

The data set indicates that 9,656 of the 11,626 employees (83%) are U.S. citizens and 1,970 (17%) are not U.S. citizens. *Id.* at ¶ 16.

### 4. Declaration of Andrew Forrester

Defendant Golden Gate Bell does not dispute that its I-9 hiring process resulted in recording the numbers above, but in support of its opposition to the motion to remand provided a declaration from an econometric analyst to interpret the data set. Dkt. No. 43, Ex. 1 (Declaration of Andrew Forrester). The expert's declaration suggests that inaccuracies in the I-9 verification system, E-Verify, result in Golden Gate Bell's hiring of many non-U.S. citizens who are unauthorized to work in the country. *Id.* Forrester includes with his declaration his curriculum vitae and a report from July 2012 about the accuracy of E-Verify.[1]

## II. Legal Standard

The Class Action Fairness Act provides that U.S. district courts have original jurisdiction over class actions when (1) the proposed class has more than 100 members; (2) the parties are minimally diverse; and (3) the amount in controversy in the aggregate exceeds $5 million. 28 U.S.C. § 1332(d)(2); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). When a defendant seeks removal from state to federal court under CAFA, it must file a notice containing a short and plain statement of the grounds for removal. 28 U.S.C. § 1446(a). There is no antiremoval presumption in cases invoking CAFA. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

---

[1] Forrester repeatedly refers to this report as dated "December 2009" but the first page of the report itself says "July 2012." *See* Forrester Decl. at ¶¶ 7, 18, 25, 28, 36. The report appears to contain data through at least June 2010, so the Court assumes that the title page's July 2012 date is most accurate even though its findings are based primarily on data from fiscal year 2009.

The "home state exception" to CAFA requires a district court to decline jurisdiction over a class action case if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). The "local controversy" exception to CAFA is similar. This rule requires the district court to decline jurisdiction over a class action if (1) greater than two-thirds of the members of all proposed plaintiff classes are citizens of the state in which the action was originally filed; (2) the principal injuries resulting from the alleged conduct were incurred in that state; (3) at least one significant defendant is a citizen of that state; and (4) no other class action was filed asserting similar factual allegations against the defendant during the three preceding years. 28 U.S.C. § 1332(d)(4)(A).

Under either exception, two-thirds citizenship in the original state must have existed at the time the action was filed. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013). Citizenship is defined as a person's domicile, that is, the place where an individual "has established a fixed habitation or abode" and intends to remain permanently or indefinitely. *Santoyo v. Consol. Foundries, Inc.*, 2016 LEXIS 142112, at *6 (C.D. Cal. Oct. 13, 2016). For jurisdictional purposes, to be a citizen of a state, a person must first be a citizen of the United States. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

A party seeking to remand bears the burden of proving that an exception to CAFA applies by a preponderance of the evidence. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007); *King v. Great Am. Chicken Corp.*, 903 F.3d 875, 878 (9th Cir. 2018). To do so, the parties may present "summary judgment-type evidence." *Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65 F. Supp. 3d 932, 980 (C.D. Cal. 2014) (citing *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1002 (9th Cir. 2007)).

III. **Discussion**

The issue before the Court is whether at least two-thirds of the members of the putative class are citizens of California. If so, the Court must decline jurisdiction over

4

these cases under both the home state and local controversy exceptions to CAFA.[2]

## A. Employment Location

Employment in a state is evidence of domicile in that state. *Lew v. Moss*, 797 F.2d 747, 750 (1986). Here, the employees in the data set were all employed by Golden Gate Bell in California because the plaintiffs' complaints define the class as "hourly employees in California." Compl. at ¶ 3. This fact suggests that all of Golden Gate Bell's California employees are domiciled in California.

## B. Address

Residence in a state is "prima facia evidence of a person's domicile." *Mondragon*, 736 F.3d at 886. Residency alone is not sufficient to show domicile. *King*, 903 F.3d at 879. District courts in this Circuit have used residence plus another factor, such as employment, as sufficient proof of domicile. *See, e.g.*, *Saldana v. Home Depot USA, Inc.*, 2016 LEXIS 80064, at 5 (E.D. Cal. June 20, 2016).

Golden Gate Bell's data shows that 99.98%, or 11,613, putative class members have addresses in California. About one-tenth of one percent, or 13 individuals, provided addresses in another state. *Id*. at ¶¶ 4, 5, 9. While this evidence of residence in California is not dispositive of these employees' domicile, the Court finds that it is prima facie evidence of domicile in California. This evidence is particularly strong given that all of Golden Gate Bell's restaurants are located in California, and that the class is made up of restaurant employees.

## C. Identification

Holding a driver's license or other identification issued by a state is strong evidence of domicile that state. *Lew*, 797 F.2d at 750; *Simpson v. Fender*, 445 Fed. Appx. 268, 269 (11th Cir. 2011) (finding that state-issued ID was evidence of domicile in the state of

---

[2] The parties do not dispute that the other elements of the local controversy exception (that the principal injuries resulting from the alleged conduct were incurred in California, that Golden Gate Bell is a citizen of California, and that no other class action was filed asserting similar factual allegations against Golden Gate Bell in the last three years) apply here. 28 U.S.C. § 1332(d)(4)(A); *see* Dkt. Nos. 39, 43.

5

issuance).

Here, 9,134 (78.57%) individuals provided ID documentation from a California entity (either the state government, a school, or a local municipality). Yu Decl. at ¶¶ 6, 7, 8, 10. The Court finds that this, too, is strong evidence of domicile in California.

**D. U.S. Citizenship**

The data set provided by Golden Gate Bell that plaintiffs rely upon states that 9,656 of the 11,626 putative class members (83%) are U.S. citizens and that 1,970 (17%) are not U.S. citizens. Yu Decl. at ¶ 16. Golden Gate Bell's only argument that at least one-third of the putative class members are not California citizens is that at least one-third of the putative class members are not United States citizens. Dkt. No. 43. Golden Gate Bell explicitly argues that its own hiring processes result in its employment of thousands of what it calls "illegal immigrants" who are unauthorized to work in the United States. Forrester Decl. at ¶¶ 15, 35, 36.

**1. Objections to the Forrester Declaration**

Golden Gate Bell supports this argument with the declaration of an "econometrics expert," Andrew Forrester. Dkt. No. 43. Plaintiffs object to the declaration as improper new evidence on reply, irrelevant, and unsupported expert testimony. Dkt. No. 44. Golden Gate Bell objects to plaintiffs' objections. Dkt. No. 46. The Court agrees with most of the plaintiffs' objections to the Forrester declaration. Though the declaration was not improperly submitted on reply under Civil Local Rule 7-3(d)(1) because it was attached to an opposition rather than a reply brief, it is largely irrelevant under Federal Rule of Evidence 402 and is not well supported scientific evidence under Federal Rule of Evidence 702.

The declaration's conclusions are based on a report prepared by Westat for the U.S. Department of Homeland Security entitled "Evaluation of the Accuracy of E-Verify Findings." Forrester Decl., Ex. 2. Forrester identifies Westat as a "well-known research firm." Forrester Decl. at ¶ 4. E-Verify is a web-based system that enables employers to confirm employees' eligibility to work in the United States by matching information

provided on I-9 forms with records from other agencies like the Social Security

Administration and Department of Homeland Security to facilitate compliance with U.S.

immigration law. *Id.* at ¶ 5. Golden Gate Bell uses E-Verify in its hiring processes. *Id.*

The Westat report and Mr. Forrester's discussion of it describe inaccuracies with the E-

Verify system based mostly on data from fiscal year 2009. Forrester Decl., Ex. 2 at x. The

report discusses national trends. *Id.* Mr. Forrester's declaration also draws on a 2016 Pew

Research Center article about rates of unauthorized immigrants in various major industry

groups. Forrester Decl. at ¶ 15, n. 1.

Because Mr. Forrester relies so heavily on the Westat report, the contents of the

declaration are only loosely connected to the facts of this case. Forrester does not analyze

the accuracy of Taco Bell's E-Verify system or describe how Taco Bell's I-9 hiring

process works. Forrester does not even have data about E-Verify's accuracy from the time

period relevant to this case, because the Westat report is from 2009 and the putative class

members were not all hired during that year. His discussion of immigration trends in

California and in the hospitality industry more generally are not particularized to the

putative class members here. With such little bearing on the data presented, Mr.

Forrester's conclusions do little to aid the Court in its determination.

Furthermore, the declaration fails under Rule 702 because it is not the product of

reliable principles and methods applied to the facts of the case.[3] The Court is unsure

whether the principles and methods underlying the Westat report are reliable because the

Court has no information about how it was created, funded, reviewed, or published.

Moreover, as plaintiffs point out in their objection to the declaration, Forrester's

calculations involve statistics that appear to be mis-cited from the Pew research study.

Dkt. No. 44 at 4–5 (noting that Mr. Forrester relies upon a 12.6% rate of unauthorized

workers in the hospitality industry, cited to the Pew Research Center article, but the article

---

[3] The Court also has concerns that the declaration is inadmissible under Rule 702(a), which requires that the expert have scientific, technical, or other specialized knowledge; according to his attached CV, Mr. Forrester received his bachelor's degrees in 2017 and his professional experience on the topics related to his declaration is limited.

itself reports an 8% rate and does not appear to mention a 12.6% rate anywhere).

Finally, despite these concerns about unreliability, Forrester's calculations result in an ultimate conclusion that hardly helps defendant's case. Forrester estimates that based on E-Verify inaccuracy rates, a plausible range for the share of Golden Gate Bell workforce that is unauthorized is approximately 34.3 percent, or "between 28.1 and 41.8 percent." Forrester Decl. at ¶ 34. This estimate barely hovers around the one-third amount that Golden Gate Bell hopes to show are not United States citizens (and therefore not California citizens).

The Court finds that the Forrester declaration is unpersuasive and that its conclusions do little to rebut the strong prima facie showing made by the plaintiffs that at least two-thirds of the putative class are California citizens. The plaintiffs' evidence, all combined, make a strong showing that more than two-thirds of the class are citizens of California. Indeed, the evidence shows that 74.82% of the putative class are (1) identified as U.S. citizens, (2) have a California address, *and* (3) have a California identification card, on top of working at a Taco Bell in California. Yu Decl. at ¶ 17. The defendants' only evidence in opposition is largely irrelevant and unreliable. The Court therefore finds that the plaintiffs have shown, by a preponderance of the evidence, that at least two-thirds of the class members are United States and California citizens.

## IV.    Motion to Seal

Plaintiff moved to seal his supplemental brief in support of remand and its exhibits. Dkt. No. 38. The Court applies a good cause standard to the motion to seal because the materials sought to be sealed are only tangentially related to the merits of this case. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). The Court finds that the parties have established good cause to seal the entirety of Exhibit 1 to the declaration of Jenny Yu (the "Data Set") because this exhibit includes personal identifying information of the putative class members. The motion to seal the entire Data Set is GRANTED. However, the Court finds that the parties have not shown good cause as to why any other portion of the motion or its exhibits should be sealed. The motion to seal as

to all other exhibits and portions of the motion is DENIED. Plaintiff should file a new version of the motion and exhibits in the ECF system reflecting this holding by July 3, 2019.

## V. Conclusion

The Court finds that, by preponderance of the evidence, plaintiffs have proven that more than two-thirds of the putative class members are California citizens. As such, both the local controversy and home state exceptions to CAFA apply to these cases. 28 U.S.C. § 1332(d)(4)(A)–(B). Therefore, the motion to remand is GRANTED and the Court declines jurisdiction over these cases. The Clerk of Court is ordered to remand these cases promptly, *Collins* to the Santa Clara County Superior Court, and *Frank* to the Alameda County Superior Court.

**IT IS SO ORDERED.**

Dated: June 19, 2019

_____
NATHANAEL M. COUSINS
United States Magistrate Judge